UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **RAY JUSTICE**,<br><br>**Plaintiff,**<br><br>v.<br><br>**CITY OF MILLERSVILLE, TENNESSEE, SHAWN TAYLOR, in his official and individual capacities, and BRYAN MORRIS, in his official and individual capacities,**<br><br>**Defendants.** | No. 3:25-cv-00468 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS SHAWN TAYLOR, IN HIS OFFICIAL CAPACITY, BRYAN MORRIS, IN HIS OFFICIAL CAPACITY, AND CITY OF MILLERSVILLE, TENNESSEE'S MOTION TO DISMISS**

## I. Statement of Facts[1]

In late 2023, Defendant City of Millersville ("the City"), through its then chief of police, Melvin Brown, hired Plaintiff Ray Justice ("Justice"); however, Justice did not start working until 2024. (ECF 1-1 at ¶ 11.) Mr. Brown and the assistant chief of police resigned before Justice began working for the City. (*Id.*)

The City hired Defendant Bryan Morris ("Chief Morris") as its next chief of police and interim city manager. (*Id.* at ¶ 10.) Chief Morris then hired Defendant Shawn Taylor ("Assistant Chief Taylor") as the City's assistant chief of police. (*Id.*)

---

[1] Because the Court assumes the facts alleged in the complaint to be true at the motion to dismiss stage, the statement of facts is based exclusively on the allegations in Plaintiff's complaint. *Myers v. City of Centerville*, 41 F.4th 746, 753 (6th Cir. 2022).

Justice's tenure with the City was short lived; Justice "shortly resigned" from the City "[b]ecause of disfunction" at the City. (*Id*. at ¶ 11.)

During the time that he worked for the City, Justice reported to Detective Trey Burroughs ("Burroughs"). (*Id*. at ¶ 12.) At some point after Justice' resigned, Burroughs told Justice—then a private citizen—that Assistant Chief Taylor had "questioned" Burroughs about Justice's "background." (*Id*.) Burroughs also told Justice that Assistant Chief Taylor "had possession of a red binder" with Justice's name and another red notebook with the name of "Cristina Templet . . ., a City Commissioner who had publicly opposed the retention of Chief Taylor," on it. (*Id*.) Burroughs "reported that [Assistant] Chief Taylor had other red binders identified by the names of other perceived political enemies of [Assistant] Chief Taylor and Chief Morris." (*Id*.) Burroughs "was unaware of any legitimate criminal investigations ongoing" against Justice or any other person identified on a red notebook. (*Id*. at ¶ 13.)

Several months after his conversation with Borroughs, "the TBI confirmed" to Justice that someone at the City's police department "had performed . . . searches on Mr. Justice, to include the federal Financial Crimes Enforcement Network"[2] ("FinCEN"). (*Id*. at ¶ 14.) Justice does not know who performed these alleged searches. (*Id*.) Justice instead presumes that "[Assistant] Chief Taylor with Chief Morris's knowledge and approval" performed the searches. (*Id*.) Justice provides no

---

[2] Justice characterizes the searches as "illegal and unauthorized." (ECF 1-1 at ¶ 14.) But this is not a factual allegation that the Court must accept as true, but rather a legal conclusion. *See e.g., Lee v. Williams*, 2023 U.S. Dist. LEXIS 201537, at *4 (W.D. Ky. Nov. 8, 2023) (finding allegation of "illegal and unlawful arrest, investigatory stop, and seizure of a free citizen" to be "a legal conclusion"). The Court does not accept such a legal conclusion masquerading as a factual allegation as true. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563-64 (6th Cir. 2011) ("We need not accept these legal conclusions as true, and we decline to do so. Legal conclusions that are masquerading as factual allegations will not suffice."); *Verble v. Morgan Stanley Smith Barney, LLC*, 676 Fed. App'x 421, 427 (6th Cir. 2017) ("Most of Verble's allegations are '[c]onclusory allegations or legal conclusions masquerading as factual allegations,' rather than 'non-conclusory allegations of fact.' Under these circumstances, these allegations are not entitled to the assumption of truth."); *see also Iqbal*, 556 U.S. at 678.

factual allegations to support that either Chief Morris or Assistant Chief Taylor actually performed the searches. (ECF 1-1.) Justice likewise provides no factual allegations to support that Chief Morris actually knew of and approved any search by Assistant Chief Taylor or anyone else. (*Id*.)

## II. Law and Argument

Justice alleges that Chief Morris and Assistant Chief Taylor violated his Fourth Amendment rights due to their alleged unreasonable searches. (ECF 1-1 at ¶¶ 18-19.) Justice then alleges that the City is liable under *Monell* for Assistant Chief Taylor's unreasonable searches. (*Id*. at ¶¶ 21-23.) Justice lastly alleges that the City negligently hired, retained, trained, and supervised Chief Morris and Assistant Chief Taylor. (*Id*. at ¶¶ 25-51.) For the reasons explained below, Justice failed to state a claim against the City.

### A. The Court should dismiss Justice's official-capacity claims against Chief Morris and Assistant Chief Taylor as redundant because the City is a named defendant.

Justice alleges official-capacity claims against Assistant Chief Taylor and Chief Morris. (ECF 1-1 at ¶¶ 8-9.) "'In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent.' 'An official capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009); *see also Coley v. Lucas Cnty.*, 799 F.3d 530, 542 (6th Cir. 2015). When the governmental entity is a named defendant, courts dismiss official-capacity suits as redundant. *See e.g., Epperson v. City of Humboldt*, 140 F. Supp.3d 676, 683 (W.D. Tenn. 2015) ("When, as here, the entity is a named defendant, official capacity claims against individual sheriffs and police officers are 'redundant' and 'superfluous.' Those claims are, therefore, DISMISSED."); *Strader v. Cumberland Cnty.*, 2020 U.S. Dist. LEXIS 9731, at *13-14 (M.D. Tenn. Jan. 21, 2020) (dismissing official-capacity claims against individual defendants since the governmental was a named party). Therefore, the Court should dismiss Justice's official-capacity claims against Chief

Morris and Assistant Chief Taylor. *See e.g., Holmes v. City of Jackson*, 2016 U.S. Dist. LEXIS 10729, at *8 (W.D. Tenn. Jan. 29, 2016) ("As the allegations against Wise, Gist, Kendrick, and Boxley in their official capacities are in effect a suit against the City of Jackson, those claims are DISMISSED as being redundant.").

**B. Justice failed to state a claim against the City under the Fourth Amendment.**

**1. Justice failed to state a claim against the City because the City is not vicariously liable for the actions of Defendants Shawn Taylor or Bryan Morris and Justice has failed to allege sufficient facts to establish that the City's own policy or custom caused Justice's alleged injury.**

The basis for Justice's Fourth Amendment claim is that someone at the Millersville Police Department ("MPD") performed searches on him, and the only specific alleged search is on the FinCEN database. (ECF 1-1 at ¶¶ 14 and 18.) Justice further alleges, without any specific facts other than his assumptions, that Assistant Chief Taylor performed the searches and that Chief Morris knew about and approved Assistant Chief Taylor's searches. (ECF 1-1 at ¶¶ 14 and 18-19.) Therefore, Justice has failed to state a claim under the Fourth Amendment.

The City cannot be liable under § 1983 based on respondeat superior. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, the City is only liable for its "own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *see also Monell*, 436 U.S. at 694. "A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom". *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013); *see also Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020).

Here, Justice has failed to allege sufficient factual content to support that the City had a custom or policy that resulted in the violation of his Fourth Amendment rights. Justice "can making a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making

authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Justice relies upon the second basis for the City's policy to create *Monell* liability. (ECF 1-1 at ¶¶ 2 and 18-19.) The second basis "involves proving that a 'deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject in question.'" *Cretacci v. Hare*, 2022 U.S. App. LEXIS 32537, at *20 (6th Cir. Nov. 23, 2022) (alterations in original).

However, Justice merely presumes that Assistant Chief Taylor performed searches on Justice and that Chief Morris knew of and approved Assistant Chief Taylor's searches. (ECF 1-1 at ¶ 14.) The specific language from Justice's complaint states:

> someone at MPD - **presumably Chief Taylor with Chief Morris's knowledge and approval** - had performed illegal and unauthorized searches on Mr. Justice[.]

*Id.* (emphasis added). Justice cannot base his allegations on presumptions and beliefs, but rather he must have a factual basis for his allegations.[3] *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (rejecting allegations made upon information and belief without any factual enhancement as the allegations "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders

---

[3] Justice relies upon what Burroughs and the TBI told him. (ECF 1-1 at ¶¶ 12 and 14.) But Burroughs and the TBI did not tell Justice that Taylor performed the searches or that Morris knew about and approved Taylor's searches. (*Id.*) This is all Justice's speculation and assumptions. This speculation is insufficient. *See Tolliver v. Chambers-Smith*, 2023 U.S. Dist. LEXIS 182796, at *29 (S.D. Ohio Oct. 11, 2023) ("Plaintiff's speculation that unconstitutional factors must have been used is not enough to state a constitutional claim."); *Travis v. ADT Sec. Servs.*, 884 F. Supp.2d 629, 634 (E.D. Mich. 2012) ("A plaintiff's factual allegations, while 'assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.'").

10507-250881 (GAL)

'naked assertion[s]' devoid of 'further factual enhancement.'"); *Smith v. Gen. Motors, LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (concluding that a complaint based on "information and belief" cannot rely upon only conclusory allegations but rather "must set forth a factual basis for such belief"); *Russell v. Claiborne*, 2025 U.S. Dist. LEXIS 60636, at *7 (E.D. Tenn. Mar. 31, 2025) (rejecting allegation that "Plaintiff believes he was denied medical treatment 'based on color, sex, or [n]ationality" as conclusory because the complaint "contains no facts to support that belief" and dismissing claim). But Justice has not alleged any actual facts to show that Taylor performed the searches, Morris knew about Taylor's searches, or how and when[4] Morris approved of Taylor's searches. (ECF 1-1.) At best, Justice has alleged in conclusory fashion that Morris had knowledge, but mere knowledge is not sufficient. Morris must have affirmatively approved Taylor's decision, and Justice has alleged no such facts. *See Cook v. Louisville/Jefferson Cnty. Metro Gov't*, 2018 U.S. Dist. 10174, at *7 (W.D. Ky. Jan. 22, 2018) ("However, ratification of a subordinate's action requires more than acquiescence—it requires affirmative approval of a particular decision made by a subordinate."). Thus, Justice has only offered conclusory allegations without any factual support, which is insufficient to state a claim. *See e.g., Dillon v. Hamlin*, 718 F. Supp.3d 733, 740-41 (S.D. Ohio 2024) (concluding that allegations of ratification without any factual support are "conclusory" and disregarding those allegations); *Pethtel v. Tenn. Dept. of Child.'s Servs.*, 2023 U.S. App. LEXIS 12744, at *12 (6th Cir. May 23, 2023) (dismissing § 1983 claim against county upon reasoning that the plaintiff "made only the conclusory allegation, with no supporting facts, that the department has

---

[4] Ratification after the illegal action fails to state a claim. *Buckley v. City of Memphis*, 2004 U.S. Dist. LEXIS 7773, at *12 (W.D. Tenn. May 4, 2004) ("Ratification occurs after the conduct, making the municipality's ratification of the incident in question unable to be the moving force before the conduct."); *Lawler v. Hardeman Cnty.*, 2022 U.S. Dist. LEXIS 177318, at *24 (W.D. Tenn. Sept. 29, 2022) ("Mere approval of illegal behavior after the fact cannot establish liability; ratification of an illegal action must be a 'moving force' behind a constitutional violation, meaning it must occur before the illegal conduct at issue.").

'adopted a policy, practice, or custom of permitting and tolerating constitutional violations by their employees' with respect to investigations of 'allegations of abuse.' 'Conclusory, unsupported allegations' that a municipality had a custom or policy that resulted in the deprivation of the plaintiff's constitutional rights do not state a § 1983 claim under *Monell*."); *McCabe v. Mahoning Cnty. Child. Serv. Bd.*, 2010 U.S. Dist. LEXIS 86075, at *21 (N.D. Ohio Aug. 20, 2010) ("To establish the existence of such a custom or policy, Plaintiffs must show specific facts supporting their claim; mere conclusory allegations of policy or custom are insufficient."); *Cook*, 2018 U.S. Dist. LEXIS 10174, at *7-8 (finding ratification theory failed because the plaintiff failed to allege facts to support that the policymaker affirmatively approved illegal action to create a policy or custom). Therefore, the Court should dismiss Justice's Fourth Amendment claim against the City. *Dillon*, 718 F. Supp.3d at 740-41 (concluding that the plaintiff failed to allege a policy or custom based on a ratification theory "because Dillon does not allege facts suggesting that Lawless—or another official with final decision-making authority—ratified Hamlin's conduct"); *Gibson v. City of Cincinnati*, 2021 U.S. Dist. LEXIS 130377, at *8-9 (S.D. Ohio July 12, 2021) (dismissing § 1983 claims against county and city because plaintiff failed to adequately plead his alleged constitutional violations); *Sweat v. Butler*, 90 F. Supp.3d 773, 780-86 (W.D. Tenn. 2015) (dismissing § 1983 claims against city because the plaintiff failed to allege sufficient factual content to establish a policy or custom).

2. **Because he had no expectation of privacy, Justice failed to state a claim for an unreasonable search under the Fourth Amendment. Therefore, the Court should dismiss Justice's Fourth Amendment claim.**

Under the Fourth Amendment, for government action to constitute a "search," there must be either (1) an invasion of a reasonable expectation of privacy or (2) a physical trespass onto a constitutionally protected area. *United States v. Jones*, 565 U.S. 400, 404-06 (2012); *Katz v. United*

*States*, 389 U.S. 347, 351 (1967); *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020). Justice has offered no allegations of a physical trespass into a constitutionally protected area. (ECF 1-1.) Consequently, the basis for his "search" must show an invasion of a reasonable expectation of privacy. *See e.g., State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001) ("It is well settled that the Fourth Amendment's procedural safeguards do not apply to police investigative activities unless those activities constitute a 'search' within the meaning of the Fourth Amendment."); *United States v. Odoni*, 782 F.3d 1226, 1238 (11th Cir. 2015) ("To prove the search of his data files was unconstitutional, Gunter must show he had an objectively reasonable expectation of privacy in the data files when United States agents examined them."). But, as explained below, Justice has no reasonable expectation of privacy in his records held by a third party, such as the FinCEN database.

In *United States v. Miller*, the United States Supreme Court held that individuals have no reasonable expectation of privacy in records held by third parties, including a depositor's bank records held by a bank. *United States v. Miller*, 425 U.S. 435, 443 (1976). This reasoning has been extended to various types of records, including government databases.

The Court in *Miller* began its analysis with *Hoffa v. United States*, 385 U.S. 293, 301-302 (1966), where the Court held that "no interest legitimately protected by the Fourth Amendment" is implicated by the governmental investigative activities unless there is an intrusion into a zone of privacy, into "the security a man relies upon when he places himself or his property within a constitutionally protected area." *Miller*, 425 U.S. at 440 (quoting *Hoffa*, 385 U.S. at 301-302).

The specific facts in *Miller* involved the government presenting "blank" grand jury subpoenas that the government presented to obtain a suspect's bank records—including deposit slips, checks, and other transactional documents—from his bank without notifying him in advance. *Id*. at 437. The defendant, Mitchell Miller, was under investigation for tax evasion. He moved to suppress

the bank records on Fourth Amendment grounds, arguing that he had a legitimate expectation of privacy in the financial documents held by the bank. Miller contended, in his motion to suppress, "that the bank documents were illegally seized." *Id*. at 438. "It was urged that the subpoenas were defective because they were issued by the United States Attorney rather than a court, no return was made to a court, and the subpoenas were returnable on a date when the grand jury was not in session." *Id*. at 438-39. Stated differently, the subpoenas in *Miller* were alleged to be "illegal" and/or "unauthorized."

The Court held that the Fourth Amendment does not prohibit the government from obtaining financial records from a third-party bank without a warrant or notice to the account holder. The Court ruled that Miller had no legitimate expectation of privacy in the contents of those documents, which financial institutions were compelled to retain under the Bank Secrecy Act.[5] "The lack of any

---

[5] The Bank Secrecy Act ("BSA") requires financial institutions to maintain records and provide reports to regulators which, in turn, assist in the investigation of criminal, tax or regulatory proceedings. *Wuliger v. Office of the Comptroller of Currency,* 394 F. Supp. 2d 1009, 1013 (N.D. Ohio 2005). An underlying purpose of the BSA was to counter money-laundering activities. *Id.* "To that end, the Secretary of the Treasury is authorized to issue regulations in promoting this record-keeping mandate as well as assisting in law enforcement or regulatory investigations." *Id.* (citing 12 U.S.C. § 153).

FinCEN was created by Treasury Order Number 105-08, issued by the Secretary of the Treasury on April 25, 1990. This order established FinCEN as a bureau within the Department of the Treasury. 31 U.S.C. § 310.

FinCEN's mission and responsibilities have evolved over time. Initially, it was tasked with creating a government-wide financial intelligence and analysis network to combat money laundering and financial crimes. In 1994, its mission expanded to include regulatory responsibilities. Later, the USA PATRIOT Act of 2001 formally established FinCEN as a bureau within the Treasury Department, further broadening its scope to support law enforcement efforts, foster interagency and global cooperation, and provide strategic analyses of financial crime trends.

"Under the 1992 Annunzio-Wylie Anti-Money Laundering Act, 'the Secretary may require any financial institution . . . to report any suspicious transaction relevant to a possible violation of law or regulation.'" *Wuliger,* 394 F. Supp.2d at 1013 (citing 31 U.S.C. § 5318(g)(1)). "The anti-money laundering laws were most recently expanded by the USA Patriot Act of 2001." *Id.*

Under the BSA, financial institutions are subject to civil and criminal penalties for violations of the record-keeping requirements or for failing to report suspicious financial activity. The Treasury Department enacted regulations requiring financial institutions to file Suspicious Activity Reports

legitimate expectation of privacy concerning the information kept in bank records was assumed by Congress in enacting the Bank Secrecy Act, the expressed purpose of which is to require records to be maintained because they 'have a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings.'" *Id*. at 443 (quoting 12 U.S.C. § 1829b (a)(1)). Thus, *Miller* stands for the proposition that there is no reasonable expectation of privacy in financial information maintained for the purpose of criminal, tax, and regulatory investigations and proceedings. *See also Jones v. Buckner*, 963 F. Supp.2d 1267, 1277 (N.D. Ala. 2013) (relying upon *Miller* and concluding that "Plaintiff does not have a reasonable expectation of privacy in his credit records, as they are held and constantly viewed by third parties").

The Court's reasoning centered on the third-party doctrine: once a person voluntarily reveals his affairs to a third party (in this case, a bank), he assumes the risk that the third party may disclose that information to the Government. *Miller,* 425 U.S. at 443 (citing *United States v. White,* 401 U.S. 745, 751-52 (1971)). The bank records in question were not Miller's "private papers," but rather the business records of the bank, created and maintained by the bank in the ordinary course of business. *Id*. at 440. "[B]anks are … not … neutrals in transactions involving negotiable instruments, but parties to the instruments with a substantial stake in their continued availability and acceptance." *Id*.

---

("SARs"). 31 C.F.R. § 103.18. Each of the respective banking agencies then promulgated regulations to comply with the BSA and SARs reporting requirement. *See* 12 C.F.R. § 208.62 (Federal Reserve Board); 12 C.F.R. § 21.11 (OCC); and 12 C.F.R. § 563.180 (Office of Thrift Supervision).

The BSA prohibits notification of a suspicious transaction report to "any person involved in the transaction that has been reported," nor may an "officer or employee of the Federal Government . . who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported. . ." 31 U.S.C. § 5318(g)(2). The importance of confidentiality, necessary to combat money-laundering activities, is further reflected in the safe harbor provisions of the Act under 31 U.S.C. § 5318(g)(3).

One of the primary purposes of FinCEN is to make it easy for law enforcement to receive FinCEN data to identify possible criminal activity and support ongoing criminal financial investigations and prosecutions and related proceedings. 31 U.S.C. § 310(d); 31 U.S.C. § 310(b)(2)(C).

(quoting *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 49 (1974)). "The records of respondent's accounts, like 'all of the records [which are required to be kept pursuant to the Bank Secrecy Act,] pertain to transactions to which the bank was itself a party." *Id*. at 440-441 (quoting *Cal. Bankers Ass'n v. Shultz,* 452 U.S. at 52).

Accordingly, the Court found that Miller could not assert a Fourth Amendment violation based on the government's acquisition of documents he had willingly entrusted to a third party for processing and recordkeeping. *Id*. at 440.

*Miller* remains a cornerstone of Fourth Amendment jurisprudence, establishing that individuals have no reasonable expectation of privacy in information voluntarily provided to third parties—a principle that has since been extended to telephone records,[6] business records,[7] and government databases. In cases involving law enforcement database queries or financial monitoring systems like FinCEN, *Miller* instructs that accessing such records does not constitute a "search" under the Fourth Amendment.

For example, in *United States v. Ellison*, the Sixth Circuit held that running an individual's license plate through a law enforcement database does not implicate the Fourth Amendment. *United States v. Ellison*, 462 F.3d 557, 561-62 (6th Cir. 2006). In so holding, the Sixth Circuit determined that there is no reasonable expectation of privacy in an officer's search of the Law Enforcement Information Network ("LEIN"), which in *Ellison* revealed an outstanding warrant. *Id*. at 562. Stated differently, law enforcement used the LEIN database to see if there was any probable cause for

---

[6] *See e.g., Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (There is no reasonable expectation of privacy in the numbers dialed from a telephone, because that information is conveyed to the telephone company. "This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.").

[7] *See e.g., United States v. Whipple,* 92 F.4th 605, 611 (6th Cir. 2024) ("Walmart's tracking of purchase history, particular as related to one specific purchase, is an example of a business record, which is not subject to a reasonable expectation of privacy.") (citing *Miller,* 425 U.S. at 440 and 443).

10507-250881 (GAL)

arrest, and they did not need any level of suspicion to search the LEIN database because it's purpose was to be a convenient aid to law enforcement. "The obvious purpose of maintaining law enforcement databases is to make information, such as the existence of outstanding warrants, readily available to officers carrying out legitimate law enforcement duties." *Id*. at 562.

Similarly, in *United States v. Cobb*, the district court affirmed that checks on an individual's criminal background through the National Criminal Information Center ("NCIC") are not "searches" subject to Fourth Amendment analysis. *United States v. Cobb*, 2012 U.S. Dist. LEXIS 186155, at *23 (E.D. Tenn. Dec. 27, 2012) (citing *Ellison* 462 F.3d at 562; *Eagle v. Morgan*, 88 F.3d 620, 628 (8th Cir. 1996) (finding that a NCIC search did not violate the plaintiff's federal constitutional rights); *Cincerella v. Egg Harbor Township Police Dept.,* 2009 WL 792489, at *3 (D. N.J. Mar. 23, 2009) (stating that "[b]ecause a person has no reasonable expectation of privacy in the information in the NCIC database, searching a person's record through the NCIC database does not violate the federal or state constitution"); and *United States v. Schmid*, , 2007 WL 540788, at *5 (E.D. Tenn. Feb. 15, 2007) (finding probable cause after the officer entered the vehicle's license plate number and received a NCIC report indicating that the vehicle was associated with the defendants, who had outstanding federal warrants)); *see also, United States v. $14,000.00 in United States Currency,* 2000 U.S. App. LEXIS 2429, *7 (6th Cir. Feb. 14, 2000) (the Fourth Amendment is not implicated when a police officer checks an individual's criminal history record).

It is established national policy that criminal records be maintained as an aid to effective law enforcement. *United States v. Smith*, 841 F.2d 1127 (6th Cir. 1988) (citing 28 U.S.C. § 534).

Plaintiff's complaint centers on allegations that Defendant Taylor accessed or caused access to financial or personal records via FinCEN or similar platforms. Under the reasoning in *Miller*, *Ellison*, and *Cobb,* even if true, these allegations do not describe conduct that violates the Fourth

Amendment. Therefore, Justice failed to state a claim. *See e.g., Jones*, 963 F. Supp.2d at 1277 (dismissing Fourth Amendment claim because the plaintiff failed to allege an illegal search under the Fourth Amendment).

### C. Because the City retains its immunity under the GTLA, the Court should dismiss Justice's negligent hiring, retention, training, and supervision claims.

Justice asserts state law claims of negligent hiring, negligent retention, and failure to train/negligent supervision against the City. (ECF 1-1 at ¶¶ 24-51.) The City is immune from these claims under the Tennessee Governmental Tort Liability Act ("GTLA").

#### 1. The City is immune under the GTLA's civil rights exception.

Under the GTLA, the City is generally immune from negligence claims. Tenn. Code Ann. § 29-20-201(a) (2025). However, under certain circumstances, the City's immunity may be removed. *See e.g.*, Tenn. Code Ann. § 29-20-202 (2025) (removing immunity for injuries "resulting from the negligent operation by any employee of a motor vehicle"). Here, the City retains its immunity under the GTLA because Justice's negligence claims arise out of a civil rights violation.

Subject to a list of exceptions, Tenn. Code Ann. § 29-20-205 removes immunity for injuries "proximately caused by a negligent act or omission of any employee within the scope of his employment." Tenn. Code Ann. § 29-20-205 (2025). One exception to this removal is "if the injury arises out of . . . civil rights." Tenn. Code Ann. § 29-20-205(2) (2025); *see also Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010) ("Injuries that 'arise[ ] out of . . . civil rights' are one such exception, that is, sovereign immunity continues to apply in those circumstances.").

The term "civil rights" in Tenn. Code Ann. § 29-20-205(2) "mean[s] and include[s] claims arising under the federal civil rights laws, e.g., 42 U.S.C. § 1983 and the United States Constitution." *Campbell v. Anderson Cnty.*, 695 F. Supp.2d 764, 778 (E.D. Tenn. 2010); *see also Johnson*, 617 F.3d at 872. The dispositive question is whether Justice's negligence claims "aris[e] out of the same

circumstances giving rise to . . . [Justice's] civil rights claim." *Bryant v. City of Memphis*, 644 Fed. App'x 381, 384 (6th Cir. 2016).

Here, the same circumstances give rise to Justice's Fourth Amendment claim and his state law negligence claims. Specifically, the entire gravamen of Justice's Complaint is the alleged "illegal and unauthorized search" on Justice, including in the FinCEN database. (ECF 1-1 at ¶¶ 10-16.) Justice even acknowledges that based upon the factual allegations in his complaint, he asserts "a claim for damages" under § 1983 for violation of the Fourth Amendment "and other legal theories," which must be his state law claims because there are no other claims alleged besides his federal claims. (ECF 1-1 at ¶ 16.) Justice provides no other factual basis for his negligence claims besides the factual basis for his civil rights claims. (ECF 1-1.) Thus, Justice bases his negligence claim and his federal civil rights claims on the same circumstances—the alleged illegal searches. "When a state law claim is based upon the same circumstances that give rise to a Section 1983 claim, a municipality is entitled to immunity." *Matthews v. City of Memphis*, 2014 U.S. Dist. LEXIS 33534, at *19 (W.D. Tenn. Feb. 21, 2014). Therefore, the City is immune under the GTLA from Justice's state law claims of negligent hiring, retention, training, and supervision. *Hnedak v. Laine*, 2021 U.S. Dist. LEXIS 114356, at *11-14 (W.D. Tenn. June 18, 2021) (holding that the municipality was immune under GTLA from plaintiff's negligence and negligent supervision claims because the claims "arise out of civil rights violations"); *Bryant*, 644 Fed. App'x at 384 (holding that the GTLA's civil rights exception bars the plaintiff's negligent training claim); *Dillingham v. Millsaps*, 809 F. Supp.2d 820, 852 (E.D. Tenn. 2011) (dismissing negligent training and supervision claim because of immunity under the civil rights exception); *see also Howard v. Knox Cnty., Tenn.*, 2016 U.S. Dist. LEXIS 195637, at *30-33 (E.D. Tenn. Sept. 7, 2016); *Cochran v. Town of Jonesborough*,

586 S.W.3d 909, 915-21 (Tenn. Ct. App. 2019); *Betty H. v. Williamson Cnty.*, 2023 Tenn. App. LEXIS 333, at *12-18 (Tenn. Ct. App. Aug. 14, 2023).

### 2. The City is immune under the GTLA's discretionary function exception.

Even beyond the civil rights exception, the City retains its immunity under the GTLA's discretionary function exception. Tenn. Code Ann. § 29-20-205(1) provides in relevant part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]

Tenn. Code Ann. § 29-20-205(1) (2025). This discretionary function exception "recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision and therefore allows the government to operate without undue interference by the courts." *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992). Courts apply the planning-operational test to determine whether the discretionary function exception applies:

> In *Bowers*, the Tennessee Supreme Court adopted the 'planning-operational' test to determine whether an act fell within the discretionary function exception. Under this test, 'decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity.' Planning decisions, the court in *Bowers* ruled, often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules.

*Peatross v. City of Memphis*, 2015 U.S. Dist. LEXIS 189393, at *25 (W.D. Tenn. Mar. 12, 2015), *aff'd* 818 F.3d 233 (6th Cir. 2016) (quoting *Bowers*, 826 S.W.2d at 430-31).

Courts have concluded that a governmental entity's hiring, training, retaining, and supervising its employees falls within the GTLA's discretionary function exception. *See Savage v. City of Memphis*, 620 Fed. App'x 425, 429 (6th Cir. 2015) (concluding that claims of negligent

training, supervision, and discipline failed because the claims "fall within the TGTLA's discretionary function exception"); *Allred v. Rodriguez*, 399 F. Supp.3d 730, 734-35 (W.D. Tenn. 2019) (concluding that claims of "negligent hiring, training, retention, and supervision fall into the TGTLA's exception to the waiver of immunity for discretionary acts"); *Peatross*, 2015 U.S. Dist. LEXIS 189393, at *25 (concluding that "the City of Memphis's acts of hiring, training and supervising its employees clearly fall within the discretionary exception outlined in the TGTLA"); *Lawler v. Hardeman Cnty.*, 2019 U.S. Dist. LEXIS 204067, at *11-12 (W.D. Tenn. Nov. 25, 2019) (concluding that "claim against Defendant Hardeman County for negligent hiring, training, retention, and supervision falls squarely into the TGTLA's exception to the waiver of immunity for discretionary acts"); *Tinkle v. Dyer Cnty.*, 2018 U.S. Dist. LEXIS 217804, at *8-9 (W.D. Tenn. Dec. 27, 2018) (concluding that "claims against Defendant Dyer County for negligent hiring, training, retention, and supervision fall into the GTLA's exception to the waiver of immunity for discretionary acts"). Therefore, the City is immune from Justice's state law claims of negligent hiring, retention, training, and supervision.

### III. Conclusion

Based on the foregoing, Justice failed to state a claim under the Fourth Amendment or Tennessee law against the City. Therefore, the Court should dismiss Justice's claims against the City.

Respectfully submitted,

**RAINEY, KIZER, REVIERE & BELL, P.L.C.**

By:       s/ Geoffrey A. Lindley
GEOFFREY A. LINDLEY (BPR No. 021574)
MATTHEW R. COURTNER (BPR No. 029113)
*Attorneys for Defendant City of Millersville*
209 East Main Street
P.O. Box 1147
Jackson, Tennessee 38302-1147
(731) 423-2414
glindley@raineykizer.com
mcourtner@raineykizer.com

# CERTIFICATE OF SERVICE

On May 2, 2025, I electronically filed a copy of this pleading. The Court's electronic filing system will provide notice to all parties indicated on the electronic filing report. Service on all other parties will be by regular U.S. mail or email. Parties may access this filing through the Court's electronic filing system.

Ben M. Rose
ROSE FIRM, PLLC
*Attorney for Plaintiff Ray Justice*
P.O. Box 1108
Brentwood, TN 37024

Keith Grant
Phillip Aaron Wells
Robinson, Smith & Wells, LLC
*Attorneys for Defendants Shawn Taylor and Bryan Morris, in their individual capacity*
Suite 700, Republic Centre
633 Chestnut Street
Chattanooga, TN 37450

Bryant Kroll
Law Office of Bryant Kroll
*Attorney for Defendants Shawn Taylor And Bryan Morris, in their individual capacities*
P.O. Box 219
Pegram, TN 37143

        s/ Geoffrey A. Lindley
        GEOFFREY A. LINDLEY