IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| RAY JUSTICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:25-cv-00468 |
| ) | JURY DEMANDED |
| CITY OF MILLERSVILLE, ) | |
| TENNESSEE, SHAWN TAYLOR, in his ) | |
| official and individual capacities, and ) | |
| BRYAN MORRIS, in his official and ) | |
| individual capacities, ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT

Comes now, the Plaintiff, Ray Justice ("Mr. Justice"), by and through counsel, and for his First Amended Complaint against the Defendants, City of Millersville, Tennessee ("Millersville"), Shawn Taylor, in his official and individual capacities ("Chief Taylor"), and Bryan Morris, in his official and individual capacities ("Chief Morris"), states as follows:

### I. NATURE OF ACTION

1. This case regards the legal effects and injustice of a soft coup perpetrated on an otherwise unsuspecting, sleepy town in Middle Tennessee. Chief Taylor, a self-described "gypsy cop" and well-known conspiracy theorist, became obsessed with investigating and prosecuting purported child pedophilia rings when he was hired by Chief Morris as the Assistant Chief of Police at the Millersville Police Department ("MPD").

2. The origins of Chief Taylor's obsession apparently began with the long-since debunked "Pizzagate" hoax at the Comet Ping Pong pizzeria in Washington, D.C., involving such notable politicians as Presidential candidate Hillary Rodham Clinton. At all times material hereto, Chief Taylor's actions described herein were known and approved by Chief Morris,

Millersville, and its legal counsel at the time, Brian Kroll ("Mr. Kroll"). Accordingly, Chief Taylor's actions or inactions in this regard constitute the "custom, policy, or practice" of Millersville. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *See also Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013); *Brokaw v. Mercer County* 253 F.3d 1000 (7th Cir. 2000); *Grech v. Clayton County Ga.*, 288 F.3d 1377 (11th Cir. 2002); *Rookard v Health & Hospitals Corp.*, 710 F.2d 41 (2nd Cir. 1983); *Abasiekong v. Shelby*, 744 F.2d 1055 (4th Cir. 1984); *Burkhart v. Randles*, 764 F.2d 1196 (6th Cir. 1985).

3. Chief Taylor's obsession with investigating child pedophilia rings in Middle Tennessee included, *inter alia*, allegations of aggravated perjury charges in connection with a child sex sting operation Chief Taylor conducted, which was largely comprised of private individuals and Chief Taylor conducting unauthorized and illegal searches into the criminal and financial histories of private Tennessee citizens, to include not only Mr. Justice, but numerous other perceived political enemies of Chief Taylor and/or Chief Morris. These actions ultimately resulted in the initiation of an investigation by the Tennessee Bureau of Investigation ("TBI"), which remains ongoing as of this writing.

4. For his part, Mr. Justice, a City Commissioner for Mt. Juliet, Tennessee, at the time, desired to continue his commitment to public service by assisting Millersville and the MPD with his law enforcement skills. In return for his efforts, Chief Taylor, with the full knowledge and acquiescence of Chief Morris, violated Mr. Justice's Fourth Amendment rights under the U.S. Constitution. Mr. Justice has suffered damages as a direct and proximate result of the Defendants' actions in this regard.

5. Following the initiation of the TBI investigation and a change in the membership of the City Commission, Chief Taylor resigned from Millersville without explanation.

Moreover, following a motion by the City Commission to reduce Mr. Kroll's hourly compensation and a controversy over an alleged conflict of interest regarding his representation of both Chief Taylor and Millersville, Mr. Kroll also resigned without further explanation. The filing of this lawsuit followed.

## II. PARTIES

6. Mr. Justice is a resident of Mt. Juliet and citizen of the State of Tennessee.

7. Millersville is a governmental entity organized under the laws of the State of Tennessee, situated in Sumner and Roberston Counties. Millersville may be served with process through its Mayor, Lincoln Atwood, 1246 Louisville Highway, Millersville, Tennessee 37072.

8. Chief Taylor was at all times material hereto an employee of Millersville and operated in his official and individual capacities. Chief Taylor may be served at 2049 Skyhawk Court, White House, Tennessee 37188.

9. Chief Morris is an employee of Millersville and operated in his official and individual capacities. Chief Morris may be served through Mayor Lincoln Atwood, 1246 Louisville Highway, Millersville, Tennessee 37072.

## III. FACTS

10. In early 2024, Chief Morris was hired as MPD's Chief of Police and Interim City Manager. In addition, despite having knowledge of Chief Taylor's multiple controversial stints with law enforcement across the State of Tennessee and being generally unqualified, Chief Morris hired Chief Taylor to serve as Millerville's Assistant Chief of Police.

11. Mr. Justice was hired in late 2023 by then-Chief of Police Melvin Brown ("Chief Brown"). Chief Brown and his assistant chief had already resigned before Mr. Justice actually began work for the city in 2024. As a former law enforcement officer, Mr. Justice assisted the

3

Case 3:25-cv-00468   Document 11   Filed 06/19/25   Page 3 of 9 PageID #: 261

MPD with immediately taking corrective action on several POST-commission issues and reinvigorating a potential grant to MPD from the U.S. Department of Justice. Because of disfunction within Millersville, Mr. Justice shortly resigned from MPD in the same manner as a litany of other public servants before him.

12. While he was employed at MPD, Mr. Justice reported to Detective Trey Burroughs ("Detective Burroughs"). After he left employment, Detective Burroughs informed Mr. Justice that he had been questioned by Chief Taylor regarding Mr. Justice's background. In addition, Detective Burroughs told Mr. Justice that Chief Taylor had possession of a red binder identified by Mr. Justice's name, even though he was a private citizen. Chief Taylor had another similar red binder identified by the name of Cristina Templet ("Commissioner Templet"), a City Commissioner who had publicly opposed the retention of Chief Taylor. Finally, Detective Burroughs reported that Chief Taylor had other red binders identified by the names of other perceived political enemies of Chief Taylor and Chief Morris in Millersville, many of which were private citizens, like Mr. Justice.

13. Detective Burroughs further advised that he was unaware of any legitimate criminal investigations ongoing by MPD against Mr. Justice or any of the other identified individuals. Previously, former Mayor Tim Lassiter had been arrested and charged under the leadership of Chief Taylor and Chief Morris at MPD. Those criminal charges, which were unsurprisingly linked by Chief Taylor's fantasies regarding widespread child pedophilia rings, have all been dropped. In any event, there was no legal basis, and certainly not any authorization, for MPD to be investigating Mr. Justice, who again, was a private citizen at the time.

14. Several months later, the TBI confirmed to Mr. Justice that someone at MPD – presumably Chief Taylor with Chief Morris's knowledge and approval – had performed illegal and unauthorized searches on Mr. Justice, to include the federal Financial Crimes Enforcement Network ("FinCEN"). In sum, the TBI indicated that Mr. Justice was a victim.

15. Even Mr. Kroll confirmed the performance of such illegal and unauthorized searches at Millersville, although his clients predictably blame other individuals for doing so, in a recent, albeit unnecessarily lengthy federal lawsuit styled *Captain Todd Dorris, et al. v. Kim Kelley, et al.*, U.S. District Court for the Middle District of Tennessee, Case No. 3:25-cv-00052. ("The reports Taylor received further substantiated evidence that the City of Millersville had been conducting improper background checks of various individuals.") *Id.* at ¶ 43, p. 20. These allegations are also consistent with local media reporting, which indicates that not only were illegal and unauthorized searches conducted against Mr. Justice, a private citizen, but they were also initiated against several other perceived political enemies of Chief Taylor and Chief Morris to include, but not be limited to, U.S. Senators, District Attorney's General, and even sitting state Circuit Court judges. Accordingly, the TBI reportedly restricted MPD's access to certain information databases.

16. Based on these allegations, Mr. Justice asserts a claim for damages against the Defendants, jointly and severally, pursuant to 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments to the U.S. Constitution and other legal theories.

## IV. CAUSES OF ACTION

### Count 1: Fourth Amendment and 42 U.S.C. § 1983 (Chief Taylor and Chief Morris)

17. Mr. Justice re-alleges and incorporates herein by reference Paragraphs 1 through 16 of the First Amended Complaint.

18. The aforementioned actions by Chief Taylor, with full knowledge and acquiescence by Chief Morris, violated the Fourth Amendment to the U.S. Constitution as applied through 42 U.S.C. § 1983. The Fourth Amendment guarantees that government officials, such as Chief Taylor and Chief Morris, may not subject private citizens, like Mr. Justice, to unreasonable searches and seizures without proper authorization.

19. Chief Taylor, with Chief Morris's full knowledge and approval, performed illegal and unauthorized searches on Mr. Justice, to include the federal FinCEN database. As a result, Mr. Justice has suffered damages.

### Count 2: *Monell* Liability (Millersville)

20. Mr. Justice re-alleges and incorporates herein by reference Paragraphs 1 through 19 of the First Amended Complaint.

21. At all times material hereto, Chief Taylor's actions, as a self-described "gypsy cop," to include, *inter alia*, performing illegal and unauthorized searches on perceived political enemies of Chief Taylor and Chief Morris, such as Mr. Justice, were known and approved by Chief Morris, Millersville, and Millersville's City Attorney, Mr. Kroll. In fact, local media reports indicated that even Mr. Kroll partook in similar searches, together with Chief Taylor, through use of his former law firm's resources without its knowledge or authorization. Finally, albeit in a pique of gaslighting, Mr. Kroll's clients confirmed Millersville's policy in this regard in a recent federal court filing. ("The reports Taylor received further substantiated evidence that

the City of Millersville had been conducting improper background checks of various individuals.") *Id.* at ¶ 43, p. 20.

22. Accordingly, Chief Taylor's actions or inactions in this regard constituted the "custom, policy, or practice" of Millersville. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *See also Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013); *Brokaw v. Mercer County* 253 F.3d 1000 (7th Cir. 2000); *Grech v. Clayton County Ga.*, 288 F.3d 1377 (11th Cir. 2002); *Rookard v Health & Hospitals Corp.*, 710 F.2d 41 (2nd Cir. 1983); *Abasiekong v. Shelby*, 744 F.2d 1055 (4th Cir. 1984); *Burkhart v. Randles*, 764 F.2d 1196 (6th Cir. 1985).

23. More specifically, Millersville had a municipal policy that existed at all times material hereto whereby illegal and unauthorized searches, to include the federal Financial Crimes Enforcement Network ("FinCEN") database, were performed on perceived political enemies of Chief Taylor and Chief Morris. Moreover, this policy was the moving force behind the Fourth Amendment constitutional violations and damages complained about by Mr. Justice here. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Both of these elements have been further confirmed by Millersville's City Attorney, although his clients depict Chief Taylor as something of a small-town Eliott Ness, uprooting perceived political corruption in Millersville one illegal search at a time. *See supra*.

## V. PRAYER FOR RELIEF

WHEREFORE, Mr. Justice prays for the following relief:

A. This First Amended Complaint be served upon each of the Defendants requiring them to respond;

B. Compensatory damages against the Defendants, jointly and severally, in the amount of $5,000,000.00;

7

C. Punitive damages against Chief Taylor and Chief Morris individually because their conduct was motivated by evil motive or intent or involved reckless or callous indifference to the federally protected rights of Mr. Justice in the amount of $1,500,000.00. *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015);

D. A jury trial of all issues triable by a jury; and,

D. For such other, further, and general relief as to which Mr. Justice may show himself to be entitled upon a hearing in this cause.

Respectfully submitted,

/s/ Ben M. Rose
Ben M. Rose (#21254)
RoseFirm, PLLC
Post Office Box 1108
Brentwood, Tennessee 37024
615-942-8295
ben@rosefirm.com

Attorney for the Plaintiff, Ray Justice

8

Case 3:25-cv-00468   Document 11   Filed 06/19/25   Page 8 of 9 PageID #: 266

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing document has been sent via the Court's Electronic Filing System to the following on this the 19th day of June, 2025:

Geoffrey A. Lindley
Matthew R. Courtner
Rainey, Kizer
209 East Main Street
Post Office Box 1147
Jackson, Tennessee 38302-1147

Keith Grant
Phillip Aaron Wells
Robinson, Smith & Wells, LLC
Suite 700, Republic Centre
633 Chestnut Street
Chattanooga, Tennessee 37450

Bryant Kroll
Law Office of Bryant Kroll
Post Office Box 219 Pegram,
Tennessee 37143

                                                                /s/ Ben M. Rose
                                                                Ben M. Rose