UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RAY JUSTICE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 3:25-cv-00468 |
| | )   JURY DEMANDED |
| CITY OF MILLERSVILLE, | ) |
| TENNESSEE, SHAWN TAYLOR, in his | ) |
| official and individual capacities, and | ) |
| BRYAN MORRIS, in his official and | ) |
| individual capacities, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY BRYANT KROLL AS COUNSEL FOR INDIVIDUAL CAPACITY DEFENDANTS

Comes now, the Plaintiff, Ray Justice ("Mr. Justice"), by and through counsel, and provides this Memorandum of Law in Support of his Motion to Disqualify Bryant Kroll as Counsel for the Individual Capacity Defendants, Shawn Taylor ("Chief Taylor") and Bryan Morris ("Chief Morris").

### I.     FACTUAL OVERVIEW

As provided in the Omnibus Response to the Defendants' Motions to Dismiss, which is included herein by reference pursuant to Fed. R. Civ. P. 10(c), at all times material hereto, Chief Taylor's actions described in the First Amended Complaint were known and approved by Chief Morris, Millersville, and its legal counsel at the time, Bryant Kroll ("Mr. Kroll"). (D.E. No. 23, PageID #: 360-361, 365.)

Mr. Justice also alleges that the same conduct performed by Chief Taylor and acquiesced to by Chief Morris was confirmed by Mr. Kroll in his very own lawsuit filed after he was unceremoniously dismissed from Millersville. (*Id.* at 362; *See also Captain Todd Dorris, et al.*

*v. Kim Kelley, et al.*, U.S. District Court for the Middle District of Tennessee, Case No. 3:25-cv-00052. ("The reports Taylor received further substantiated evidence that the City of Millersville had been conducting improper background checks of various individuals.") *Id.* at ¶ 43, p. 20.) (D.E. No. 23, PageID #: 364.) Not surprisingly, Mr. Kroll feigns this is a reference to illegal criminal searches being performed by the previous city administration. (D.E. No. 26, PageID #: 532.)

Finally, Mr. Justice alleges, "In fact, local media reports indicated that even Mr. Kroll partook in similar searches, together with Chief Taylor, through use of his former law firm's resources without its knowledge or authorization." (D.E. No. 23, PageID #: 366.)

Mr. Kroll served as City Attorney for Millersville from June, 2024, until December, 2024, when he was unceremoniously dismissed, technically resigning. (Declaration of Ray Justice ("Justice Declaration") at ¶ 2.) During his tenure, Chief Taylor and Chief Morris both worked for Millersville. (Justice Declaration at ¶ 2.) On June 5, 2024, NewsChannel 5 posted an article titled "Millersville city attorney admits he generated reports used by conspiracy cop, but denies conflict of interest." (*Id.* at ¶ 3, Exhibit 1.)

The substance of the article was also broadcast by NewsChannel 5 at or near the time of the article. (*Id.*) The article provides, in pertinent part: "Kroll now admits he used his old law firm's accounts to generate research reports that have fueled some of Shawn Taylor's bizarre conspiracy theories — even as Kroll encouraged the Millersville Board of Commissioners not to hold a special meeting to investigate the city's so-called conspiracy cop." (*Id.*)

2

While the media had already suggested by this time Mr. Kroll had a conflict of interest,[1] "Bryant Kroll wears a lot of hats," Mr. Kroll himself admitted to being the subject of "several" disciplinary complaints by the Board of Professional Responsibility based on the same issues. (*Id*.) The article also noted a podcast, portions of which were featured in the broadcast version of the news story, where Chief Taylor references "'an attorney in Nashville that's been paying attention to these podcasts.'" (*Id*.) In turn, the podcast shows Chief Taylor holding paperwork from one of the criminal searches – the same type of search complained of by Mr. Justice here – referencing The Blackburn Firm. (*Id*.)

According to the article and Mr. Kroll's LinkedIn account, that was Mr. Kroll's former law firm. (*Id*. at ¶ 4, Exhibit 2.) Moreover, Gary Blackburn ("Mr. Blackburn") himself confirmed Mr. Kroll's employment there. Mr. Blackburn stated in the article: "'This is highly inappropriate, a misuse of that research service and was done without my knowledge.'" (*Id*.) For his part, Mr. Kroll claimed the searches were related to "legal work." (*Id*.)

At the end of the day, however, the fact is that Mr. Kroll was City Attorney for Millersville at the time of the events at issue in Mr. Justice's First Amended Complaint. Mr. Justice alleges that Mr. Kroll approved of the illegal criminal searches, similar searches were apparently performed at Millersville before Mr. Justice worked there (although Mr. Kroll blames this illegality on the former administration), and based on media reports, Mr. Kroll performed the same kinds of criminal searches together with Chief Taylor.

---

[1] Indeed, Mr. Kroll has been disqualified by at least one court prior to this lawsuit, the Chancery Court for Sumner County, Tennessee, for a similar conflict of interest based upon his status, in part, as a lawyer witness. (*See* Exhibit A; *See also*, Tennessee Judge Removes Attorney Bryant Kroll from Mayor's Ouster Suit Due to Conflicts of Interest.)

3

Case 3:25-cv-00468    Document 35    Filed 08/15/25    Page 3 of 10 PageID #: 649

All of the foregoing, together with the fact that Mr. Kroll has been previously disqualified in State Court regarding the same kind of conflict issues, (*see* Exhibit A), strongly suggests that Mr. Kroll should also be disqualified here as counsel for the Individual Capacity Defendants.

## II. LEGAL ARGUMENT

In bringing a motion to disqualify, the moving party obviously bears the "burden of proving that opposing counsel should be disqualified." *McKinney v. McMeans*, 147 F. Supp. 2d 898, 900 (W.D. Tenn. 2001) (citing *Bartech Indus., Inc. v. Int'l Baking Co., Inc.*, 910 F.Supp. 388, 392 (E.D. Tenn. 1996)). The issue of disqualification lies within the sound discretion of the trial court. *Howard v. Bd. of Educ. of Memphis City Sch.*, 70 F.App'x 272, 278 (6th Cir. 2003).

The Tennessee Supreme Court, pursuant to its inherent constitutional authority, "has original and exclusive jurisdiction to promulgate its own Rules," and this "authority embraces the . . . supervision of the practice of law." *State v. Orrick*, 592 S.W.3d 877, 885-86 (Tenn. Crim. App. 2018) (citing *Petition of Tenn. Bar Ass'n*, 539 S.W.2d at 807; *Clinard*, 46 S.W.3d at 183). The Tennessee Supreme Court adopted the Rules of Professional Conduct in 2003, which set out the ethical standards relating to both the practice and the administration of law in Tennessee courts. Tenn. Sup. Ct. R. 8, RPC; *See also*, *Orrick*, 592 S.W.3d at 877.

Comments to the Rules were likewise adopted by the Tennessee Supreme Court and intended to "explain[ ] and illustrate[ ] the meaning and purpose of the Rules" and to be "guides to interpretation" in order to maintain compliance with the Rules. *Orrick*, 592 S.W.3d at 886 (citing Tenn. Sup. Ct. Rule 8, Scope [15], [23]). "Pursuant to Local Rule 83.01(c)[(6)of the Middle District Court of Tennessee], attorneys appearing before courts in this District are held to the standards set forth in the Tennessee [Rules of Professional Conduct]." *Garland v. Ford*

4

*Motor Co.*, 2015 WL 1401030, at *5 (M.D. Tenn. Mar. 26, 2015) (quoting *Melville Capital, LLC v. Tenn. Commerce Bank*, 2011 WL 6888526, at *2 (M.D. Tenn. Dec. 29, 2011)).

Rule 3.7 provides, as follows:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless:

    (1) the testimony relates to an uncontested issue;

    (2) the testimony relates to the nature and value of legal services rendered in the case; or

    (3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness, unless precluded from doing so by RPC 1.7 . . .

Rule 3.7 was implemented so clients would be protected when their lawyer is expected to testify against them, most often where the opponent calls the lawyer as an involuntary witness. Douglas R. Richmond, Lawyers As Witnesses, 36 N.M.L. Rev. 47, 58 (2006). As the North Dakota Supreme Court has explained, a conflict contemplated by Rule 3.7(b) arises "when an attorney's testimony would prejudicially contradict or undermine his client's factual assertions." *Sargent County Bank v. Wentworth*, 500 N.W.2d 862, 871 (N.D. 1993). "Combining the roles of advocate and witness **_can prejudice the opposing party_** and can involve a conflict of interest between the lawyer and client." Tenn. Sup. Ct. R. 8 (3.7), Cmt. [1]. (emphasis added)

"The opposing party has a proper objection where the combination of [testifying lawyer's dual roles as advocate and witness] **_may prejudice that party's rights_** in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by

an advocate witness should be taken as proof or as an analysis of the proof." Tenn. Sup. Ct. R. 8 (3.7), Cmt. [2]. (emphasis added)

Rule 3.7 allows an attorney to function both as an attorney and a witness as long as he is not a necessary witness. Where an attorney has unique and personal knowledge of a party's affairs, he is likely to be called as a witness. *Harbin Enterprises Gen. P'ship v. Ingram Micro Inc.*, 2007 WL 9710345, at *11 (W.D. Tenn. Aug. 15, 2007). Here, this description fits Mr. Kroll like a glove, as it did before the State Court, which disqualified him for similar conflict issues. (Exhibit A.) If an attorney is likely to testify to a contested issue, he is deemed a necessary witness. *Id*. (citing *Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F. Supp. 96, 100 (D. Del. 1987)). A lawyer cannot act as an advocate at trial where the lawyer is likely to be a necessary witness, unless his testimony relates to an uncontested issue or the nature of the services rendered, or unless his disqualification would work a substantial hardship on the client. Tenn. Sup. Ct. R. 8 (3.7(a)).

"In determining if it is permissible to act as advocate in a trial in which the lawyer will be a necessary witness, the lawyer must also consider that the dual role may give rise to a conflict of interest that will require compliance with RPC[] 1.7 . . . For example, if there is likely to be substantial conflict between the testimony of the client and that of the lawyer, the representation involves a conflict of interest that requires compliance with RPC 1.7." Tenn. Sup. Ct. R. 8 (3.7), Cmt. [6].

If a party is able to ascertain early in the litigation that its counsel may be called as a witness, that party cannot claim substantial hardship if the counsel is later disqualified from trial representation. *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 713-14 (6th Cir.

1982). Moreover, there is no prejudice to the Individual Capacity Defendants here because they have co-counsel in addition to Mr. Kroll.

Rule 1.7 provides, in pertinent part, as follows:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

"Even where there is no direct adversity between clients, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's **_other responsibilities or interests._**" Tenn. Sup. Ct. R. 8 (1.7), Cmt. [8]. (emphasis added) "A test for determining a disqualifying conflict . . . is whether the attorney 'made a choice between possible alternative courses of action [which were] helpful to one client but harmful to

7

Case 3:25-cv-00468   Document 35   Filed 08/15/25   Page 7 of 10 PageID #: 653

[another].'" *State v. Askew*, 2015 WL 9489549, at *4 (Tenn. Crim. App. Dec. 29, 2015) (quoting *State v. Tate*, 925 S.W.2d 548, 552-53 (Tenn. Crim. App. 1995)).

Under Rule 1.7(b)(1), representation is "prohibited if, in the circumstances, the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation." Tenn. Sup. Ct. R. 8 (1.7), Cmt. [15]. Rule 1.0(a) defines "believes" as "[a] person's belief may be inferred from circumstances." Tenn. Sup. Ct. R. 8 (1.0(a)). A conflict of interest exists "if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another . . ." Tenn. Sup. Ct. R. 8 (1.7), Cmt. [24].

As detailed *supra* and similar to the previous State Court disqualification, (Exhibit A), Mr. Kroll has "unique and personal knowledge" of the parties' affairs and the circumstances underlying this lawsuit. *Harbin Enterprises Gen. P'ship v. Ingram Micro Inc.*, 2007 WL 9710345, at *11 (W.D. Tenn. Aug. 15, 2007). Indeed, Mr. Kroll is accused of committing, let alone approving, the very same illegal criminal searches Mr. Justice complains of in his First Amended Complaint. As such, he is extremely "likely to be called as a witness," and Mr. Justice's counsel has communicated the same to Mr. Kroll. Notwithstanding, just like he did before the Chancery Court for Sumner County, Mr. Kroll appears to deny any conflicts with his representation here.

Accordingly, the anticipated testimony of Mr. Kroll concerns contested issues. Where an attorney is to testify as to contested issues, he is deemed a "necessary witness." *Id.* (citing *Cannon Airways*, 669 F. Supp. at 100. Moreover, the Individual Capacity Witnesses will not be prejudiced by Mr. Kroll's disqualification because they are also represented in this matter by Aaron Wells.

WHEREFORE, PREMISES CONSIDERED, Mr. Justice's motion should be granted in all respects, and Mr. Kroll should be disqualified from representing the Individual Capacity Defendants because he is a necessary witness.

Respectfully submitted,

/s/ Ben M. Rose
Ben M. Rose (#21254)
RoseFirm, PLLC
Post Office Box 1108
Brentwood, Tennessee 37024
615-942-8295
ben@rosefirm.com

Attorney for the Plaintiff, Ray Justice

## CERTIFICATE OF SERVICE

      I hereby certify that a true and exact copy of the foregoing document has been sent via the Court's Electronic Filing System to the following on this the 15th day of August, 2025:

Geoffrey A. Lindley
Matthew R. Courtner
Rainey, Kizer
209 East Main Street
Post Office Box 1147
Jackson, Tennessee 38302-1147

Keith Grant
Phillip Aaron Wells
Robinson, Smith & Wells, LLC
Suite 700, Republic Centre
633 Chestnut Street
Chattanooga, Tennessee 37450

Bryant Kroll
Law Office of Bryant Kroll
Post Office Box 219
Pegram, Tennessee 37143

                                    /s/ Ben M. Rose
                                    Ben M. Rose